# United States Court of Appeals
## For the First Circuit

No. 25-1404

SANDY HARRIS, JR.,

Plaintiff, Appellant,

v.

NATIONAL GRID USA SERVICE COMPANY, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Angel Kelley, U.S. District Judge]

Before

Montecalvo, Kayatta, and Rikelman,
Circuit Judges.

Alan H. Crede, with whom Robert S. Mantell was on brief, for appellant.

Lisa Stephanian Burton, with whom Laurielle M. Howe and Ogletree, Deakins, Nash, Smoak & Stewart, P.C. were on brief, for appellee.

March 24, 2026

**KAYATTA**, **Circuit Judge**. Sandy Harris, Jr., appeals the district court's grant of summary judgment in favor of his former employer, National Grid USA Service Company, Inc. ("National Grid"), on his claims of unlawful retaliation under Massachusetts and federal law. The district court found Harris had failed to show the causal nexus required to sustain his claims. We agree that the clear chronology of events precludes any finding that Harris's protected activity caused his termination. Our reasoning follows.

**I.**

National Grid, a utility company, employed Harris as a "Change Analyst," which required him to travel throughout his service territory -- Massachusetts, Rhode Island, and part of New York -- from his base in Massachusetts. In July 2020, during the COVID-19 pandemic, Harris took time off work to travel to Ohio and California to visit family. On July 28, the day after his vacation ended, he informed his boss that, because he was not required to be on-site "due to COVID-19 concerns," he had not returned to Massachusetts and was looking to work from Ohio or California under a company policy permitting employees who would not be appearing on-site to work outside their service areas on a temporary basis. The company did have a policy allowing employees to temporarily work from outside their territories, but only if they had the

approval of their supervisors.[1]  Harris had not received that approval.

On July 30, National Grid's Director of Human Resources, Judith Dunn, sent Harris an email with a letter stating that he had "violated company policy by not seeking management approval to work out of state at the completion of [his] vacation" and that he would be deemed to have resigned unless he returned to his territory immediately.  Dunn also offered Harris the possibility of a severance agreement.[2]  Harris replied to Dunn's email that same day, stating that he did not intend to resign but was "requesting to work out of state on a temporary basis."  He vowed to return to his service territory immediately if his request was not approved.

Harris has conceded that it was not until his July 30 reply to Dunn -- sent after he received Dunn's letter telling him he had to return to his territory or be deemed to have resigned -- that he "stated, for the first time, that he had preexisting conditions" placing him at a "higher risk for COVID" and that he was requesting a "reasonable accommodation" allowing

---

[1]  The policy also required employees to continue to perform "storm duty assignments," which require employees to work during certain storms, and to consult with a tax advisor before working from out of state.

[2]  Harris initially expressed interest in a severance agreement but eventually rejected the offer.

- 3 -

him to work off-site.[3]  Harris also does not contend that he in any way suggested that he suffered any condition that prevented him from returning to his territory and working off-site from there.  In response, Dunn reiterated that Harris had not sought or received managerial approval prior to working from outside of his service territory and again directed him to immediately return.

Harris did not return to his service territory.  Instead, he filed and then withdrew a request for leave under the Family and Medical Leave Act (FMLA).  He also provided National Grid with a brief letter from his doctor stating merely:  "It is my medical opinion that Sandy Harris would benefit from an accommodation to work remotely during the COVID pandemic."  The letter did not suggest that there was any medical reason why Harris could not work remotely from his home in his territory instead of from Ohio or California.  On August 12, National Grid notified Harris that this letter was insufficient and asked for more documentation by August 18.

---

[3]  Harris nevertheless argues that, separate from this July 30 reply to Dunn, he also made a "general request for reasonable accommodation" on July 22.  Appellant's Br. 36.  But Harris does not elaborate on what accommodation he requested, and the record is bereft of evidence that any request he purportedly made that day meets the legal standard for protected conduct.  See Moore v. Indus. Demolition LLC, 138 F.4th 17, 34 (1st Cir. 2025) (requiring a reasonable accommodation request to "[a]t the least . . . identify some desired accommodation and explain how the desired accommodation is linked to some handicap" to qualify as protected conduct under the Massachusetts law on which Harris relies).

- 4 -

Harris did not supply the requested documentation. Nor did Harris ever assert that there was any medical reason why he could not return to his territory, whether or not he appeared on-site at the workplace. National Grid then terminated his employment on August 19.

**II.**

While Harris's complaint sought to advance several claims, he challenges on appeal only the district court's grant of summary judgment for National Grid on his retaliation claims, which we review de novo. See Alam & Sarker, LLC v. United States, 113 F.4th 153, 161 (1st Cir. 2024) ("Summary judgment is appropriate if the moving party shows that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."). He does not press any claim that National Grid improperly failed to accommodate any disability. Instead, he contends that he was fired because he asserted his right to seek accommodation of a disability under Massachusetts law and/or relief under the FMLA. See Mass. Gen. Laws ch. 151B, § 4(4)-(4A); 29 U.S.C. §§ 2601-2654.[4]

Harris's retaliation claims require him to prove a causal connection between conduct protected by those laws and his termination. See Moore v. Indus. Demolition LLC, 138 F.4th 17, 32

---

[4] Harris acknowledges that these claims are "largely duplicative," and, accordingly, we address them together. Appellant's Br. 56.

(1st Cir. 2025) (Massachusetts law); Stratton v. Bentley Univ., 113 F.4th 25, 48 (1st Cir. 2024) (FMLA). The record is clear, though, that before National Grid learned Harris was going to apply for any accommodation or other relief, it had already decided to fire him if he refused to return to his territory immediately. Indeed, it so informed him on July 30, and it was only in response to that ultimatum that Harris first claimed to have a preexisting condition requiring some accommodation.

Given this chronology, Harris's assertion to National Grid that he had some medical condition requiring him to work off-site cannot have caused National Grid to issue the ultimatum that Harris return to his service territory or be let go. "Causation moves forward, not backwards, and no protected conduct after an adverse employment action can serve as the predicate for a retaliation claim." Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36, 42 (1st Cir. 2013) (finding there was "no causal link" between an employee's protected conduct and his termination for the "obvious" reason that his employer "recommended firing [him] before" the protected conduct occurred); see also Jones v. Nationwide Life Ins., 696 F.3d 78, 90 (1st Cir. 2012) ("When an employee requests an accommodation for the first time only after it becomes clear that an adverse employment action is imminent, such a request can be too little, too late." (cleaned up)); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) (explaining

that, "[w]ere the rule otherwise, then a disgruntled employee, no matter how poor his performance or how contemptuous his attitude toward his supervisors, could effectively inhibit a well-deserved discharge by merely" engaging in subsequent protected conduct).

Nor is there otherwise any indication that Harris would have retained his job if he had not requested accommodation or exercised his rights under the FMLA. See Pearson, 723 F.3d at 42 (holding plaintiff had not shown causation where, although only a recommendation to terminate and not the final decision to do so predated his protected conduct, he "point[ed] to no evidence that this recommendation would have been rejected" if not for that conduct). Instead, it appears Harris's request for an accommodation actually postponed his termination while National Grid considered that request. The company's medical department provided Harris with detailed guidance regarding the medical documentation necessary and the deadline to submit the same. It was only when Harris failed to submit appropriate documentation to support his claim that National Grid finally terminated his employment, almost three weeks after the company told him his failure to return immediately from outside his territory would be considered job abandonment. This sequence of events manifests bend-over-backwards respect for, rather than retaliation against, Harris's assertion of his rights.

Similarly, the fact that National Grid checked to ensure Harris had not submitted a request for FMLA leave on the eve of his termination does not suggest they were "dedicated to ending his employment before he would file." Appellant's Br. 59. Instead, Dunn's August 18 email to National Grid's medical department, asking for an update regarding whether Harris had submitted medical documentation or had requested FMLA leave, explicitly stated that she "want[ed] to ensure [National Grid] ha[d] given [Harris] the agreed time to respond." The fact that National Grid was on alert for any medical documentation or leave requests from Harris again suggests they were being sensitive to, rather than antagonistic toward, his rights.

We therefore agree with the district court that Harris has not produced evidence from which a reasonable jury could conclude that he was terminated for requesting reasonable accommodation under Massachusetts law or for exercising his rights under the FMLA.

**III.**

We <u>affirm</u> the district court's grant of summary judgment in full.